IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| EUGENE EDWIN SHERBONDY,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN JIM SALMONSEN,<br><br>Respondent. | Cause No. CV 24-13-GF-DWM<br><br>ORDER |

Currently pending is state pro se petitioner Eugene Edwin Sherbondy's ("Sherbondy"), application under 28 U.S.C. § 2254, seeking habeas corpus relief. (Doc. 1.) Sherbondy was directed by Judge Morris to show cause as to why the matter should not be dismissed as untimely. (Doc. 5.) Sherbondy timely responded. (Doc. 6) Based upon Sherbondy's response, the State was directed to file an answer. (Doc. 7.) In the interim, the matter was transferred to the Undersigned. (Doc. 9.) The State having now responded and Sherbondy having filed a reply, the matter is ripe for adjudication.

For the reasons discussed herein, Sherbondy's petition will be dismissed as untimely.

1

I.      **Factual/Procedural History**

Sherbondy was convicted of one count of Trafficking of Persons, in violation of Mont. Code Ann. §§45-5-702(a) & 45-5-702(2)(b)(i) (2017). Sherbondy entered into a binding Plea Agreement pursuant to which six other felonies, including Sexual Intercourse without Consent, Sexual Abuse of Children, Aggravated Promotion of Prostitution, and Tampering with Witnesses or Informants, were dismissed. *See,* Plea Agreement (Doc. 12-34.) The Plea Agreement specifically noted that the "Defendant agrees that he is subject to sentencing under the 2017 MCA §45-5-702." (*Id.* at 4.) Sherbondy entered an *Alford* plea. He was sentenced in accordance with the Plea Agreement to 40 years at Montana State Prion, with 25 of the years suspended. (*Id.* at 4.) Judgment was entered on September 28, 2020. (Doc. 12-41.) Sherbondy did not file an appeal, nor did he seek postconviction relief in the state district court.

Apparently on May 31, 2023, Sherbondy received a letter from the Montana Board of Pardons and Parole advising him that he would not be parole eligible until he completed SOP II, the second phase of the sexual offender program. (Doc. 1 at 2.) Sherbondy is apparently prevented from completing this program while also maintaining his innocence. (*Id.*)

On September 1, 2023, he filed a petition for a writ of habeas corpus with the Montana Supreme Court. There he argued that the district court did not have

authority to sentence him as the crimes mentioned in the Information occurred between January 1, 2009, and December 31, 2011, and that §45-5-702, MCA, and Trafficking of Persons did not exists as a criminal offense during that time period. Accordingly, he contended that the State used an "unconstitutional and retroactive application of an *ex post facto* law to increase the possible maximum sentence from 15 years to 50 years." *Sherbondy v. Salmonsen*, No. OP 23-0492, 2023 WL 6456897, *1 (Mont. Oct. 3, 2023.) Sherbondy claimed his sentence was facially invalid.

Upon review of the relevant documents from the lower court, it was noted that while the underlying events included the time period from January 1, 2009 to December 31, 2011, it also alleged offenses committed between January 2002 through December 2018. *Id.* The Court observed that the Plea Agreement listed a total of six original charges and stated that Sherbondy expressly agreed he was subject to sentencing under the 2017 MCA. *Id.* The Court also discussed that Sherbondy's former counsel explained to him that he received a significant benefit of the bargain by pleading to one offense, specifically she wrote in a letter:

> Please recall you were charged with six (6) felonies, including rape, sexual abuse, and prostitution of minors. The "deal" I got you was the State dismissed five (5) of those charges and you only pled No Contest[1] to one count of trafficking of persons.

---

[1] Although counsel referred to the plea entered by Sherbondy as a "no contest" plea, as discussed below, he actually entered an *Alford* plea.

3

*Id.* The Court pointed out that three of Sherbondy's charged offenses carried a maximum punishment of life in prison. By entering into a voluntary plea agreement, Sherbondy waived the right to challenge any defect in his sentence or claims of constitutional violations which occurred prior to entry of the plea. *Id.* at *2 (additional citations omitted). Sherbondy's claims came too late and through the wrong remedy, because he did not appeal his conviction and sentence, he was precluded from mounting a collateral attack. Sherbondy failed to demonstrate illegal incarceration, accordingly his petition was denied and dismissed. *Id.*

In his federal petition, Sherbondy asserts: (1) expired statute of limitations (Doc. 3 at 1, 2-5), (2) *ex post facto* violation, (*id.* at 1, 6-9), (3) ineffective assistance of counsel by Mark Frisbee, (*id.* at 1, 10-13), (4) ineffective assistance of counsel by Lisa Kaufman, (*id.* at 1, 14-22), and (5) prosecutorial misconduct, (*id.* at 1, 23-30). Sherbondy acknowledges that claims 3, 4, and 5 have not been properly exhausted. (*Id.* at 1.) Sherbondy believes his conviction should be reversed and asks that all charges against him dismissed with prejudice. (*Id.* at 30); *see also,* (Doc. 14 at 9.)

II.   **Analysis**

A threshold issue for the Court is whether these proceedings are time-barred by the applicable statute of limitations. The time-bar issue is to be resolved before considering other procedural issues or the merits of any habeas claim. *See, White*

*v. Klitzkie*, 281 F. 3d 920, 921-22 (9th Cir. 2022).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year limitations period applies to petitions filed by state prisoners under 28 U.S.C. § 2254. *See,* 28 U.S.C. § 2244. Absent a reason to apply one of the other "trigger" dates in 28 U.S.C. § 2244(d)(1),[2] Sherbondy's federal petition had to be filed within one year of the date his conviction became final. 28 U.S.C. § 2244(d)(1)(A).

As set forth above, judgment was entered September 28, 2020. Sherbondy pursued no direct appeal, so his conviction became final 60 days later on Monday, November 30, 2020. *See,* Mont. R. App Pro. 4(5)(b)(i). The one-year limitations period commenced on Tuesday, December 1, 2020, and expired one year later, absent applicable periods of tolling. *See Patterson v. Stewart,* 251 F. 3d 1243, 1245-47 (9th Cir. 2001)(the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Accordingly, Sherbondy should have filed in this Court by Wednesday, December 1, 2021. Sherbondy filed his federal petition on January 21, 2024, more than two years too late. *See,* (Doc. 3 at

---

[2] The limitations period under 2244(d)(1) is triggered and begins to run from the latest of: (A) the date on which the underlying judgment became final through either the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which any impediment to the filing of a federal petition created by unconstitutional state action is removed; (C) the date on which a newly recognized and retroactively applicable constitutional right was first recognized by the United States Supreme Court; or (D) the date on which the factual predicate underlying a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

30.)

On September 1, 2023, Sherbondy filed his state habeas petition. Federal time is tolled while a state prisoner has a "properly filed application for State postconviction or other collateral review" pending in state court. 28 U.S.C. § 2244(d)(2). The tolling provision of § 2244(d)(2) can only pause a clock if it has not yet fully run; it cannot "revive" the limitations period once it has expired (i.e., restart the clock to zero). Thus, Sherbondy's state court petition for collateral review filed after the expiration of the statute of limitations did not toll the limitations period under § 2244(d)(2). *See Ferguson v. Palmateer*, 321 F. 3d 820, 823 (9th Cir. 2003); *Jimenez v. Rice*, 276 F. 3d 478, 482 (9th Cir. 2001).

    i.    **Statutory Tolling/Delayed Tolling Start Date**

Although Sherbondy does not directly argue he is entitled to statutory tolling he suggests that he is entitled to a delayed start date of his federal limitations period. He states that he did not learn that one of his alleged victims had been deemed a "huge liar" and had a reputation for being untruthful until after the Montana Supreme Court issued its decision in *State v. Mountain Chief*, 2023 MT 147, 413 Mont. 131, 533 P. 3d 663. (Doc. 14 at 5-6.) In that matter Ms. Mountain Chief was charged with two felonies- Trafficking of Persons and Sexual Abuse of Children. Prior to trial, the trafficking offense was dismissed.

In relation to the sexual abuse of children offense, the State alleged

6

Mountain Chief knowingly sold her four-year-old daughter, J.L.D., to Sherbondy for sex at his home. At the first trial, the jury was unable to reach a verdict, and the court declared a mistrial. Following a second trial, Mountain Chief was convicted of Sexual Abuse of Children. *Mountain Chief*, 2023 MT 147, ¶¶3-4.

One of the issues raised on appeal was that the district court abused its discretion by denying Mountain Chief's motion for a mistrial based upon the failure of the State to timely disclose an investigative note. Between day two and day three of Mountain Chief's trial, a note was discovered in a detective's file, taken after speaking with J.L.D.'s aunt, Kathy Little Dog, in which Little Dog apparently stated that J.L.D. is "a huge liar." *Id.* at ¶35. The defense argued the note could not be admitted through available witnesses and it was, therefore, prejudiced by the late discovery. The State made Little Dog available for a defense interview and agreed the defense could call her as a witness, if necessary. After interviewing Little Dog, the defense team elected not to call her and instead obtained testimony from the detective that J.L.D. had a reputation for not being truthful. As a sanction for the late disclosure, the court precluded the State from calling Little Dog as a rebuttal witness. *Id.*

The Court determined that Mountain Chief failed to show the unintentionally late disclosure of the note prejudiced her. The lower court took appropriate action including permitting the interview of Little Dog and allowing

7

the defense to elicit testimony from the detective regarding J.L.D.'s reputation of untruthfulness. Given the circumstances, the lower court did not abuse its discretion in denying the motion for a mistrial. *Id.* at ¶36. Mountain Chief's 100-year prison sentence with 50 years suspended was affirmed.

Sherbondy was initially charged with Trafficking of Persons, Sexual Intercourse without Consent, and Sexual Abuse of Children. J.L.D., the same victim from the Mountain Chief case, was listed as the alleged victim. *See*, Aff. & Infor. (Docs. 12-1 & 12-2.) A first amended affidavit and information were filed adding a count of Aggravated Promotion of Prostitution; Sherbondy's common-law wife, S.C., was listed as the victim of the aggravated prostitution charge. *See, e.g.*, (Docs. 12-9 & 12-10.) A second amended affidavit and information were filed adding two counts of Tampering with Witnesses or Informants. *See*, (Docs. 12-24 & 12-25.) In the second amended information, Sherbondy was alleged to have requested two separate individuals contact S.C. and encourage her not to testify against him. *See e.g.*, (Doc. 12-24 at 4.)

Sherbondy maintains that he did not know of the information relating to J.L.D.'s propensity for untruthfulness, as evidenced by the note in the Mountain Chief trial, that his attorneys did not uncover this evidence, and the State did not disclose it to him at the time he changed his plea and/or was sentenced in 2020. (Doc. 14 at 6-7.) Accordingly, Sherbondy believes his limitations period should

not have begun running until the Montana Supreme Court issued its decision in the Mountain Chief case in August of 2023.

Sherbondy entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). An *Alford* plea is a plea of guilty in which the defendant maintains his innocence. *See generally, Alford*, 400 U.S. at 36; *see also, United States v. Crowell*, 374 F. 3d 790, 791 (9th Cir. 2004); *United States v. Mancinas-Flores*, 588 F. 3d 677, 681 (9th Cir. 2009). As the State explained at sentencing, it was willing to enter into this agreement in order to prevent J.L.D. and her sister from having to testify at a third trial. There was also concern about S.C. having to testify against Sherbondy, her partner of over 20 years, in addition to Sherbondy's age and deteriorating health. *See*, (Doc. 3-1 at 34-35.) Sherbondy received the benefit of a plea agreement which significantly limited his exposure of prison time. (*Id.*)

While Sherbondy maintained that he did not violate J.L.D., he also acknowledged that if the case went to trial the State could prove the matter beyond a reasonable doubt and the jury would likely convict him of trafficking. *See*, Sent. Trans. (Doc. 3-1 at 45:8-12); *see also*, COP Trans. (Doc. 12-26 at 13-14.) As set forth herein, he received a significant benefit to entering into the plea agreement. The time to challenge the evidence against him and the credibility of the alleged victim would have been at trial. But Sherbondy voluntarily opted to forgo his right to trial in exchange for the certainty offered by the binding plea agreement. The

9

fact that he learned of potentially useful information years after the fact does not meant that the State created such an impediment by its unconstitutional acts for purposes of § 2244(d)(1)(B). Nor is there a valid reason to run the limitation period from the date on which the factual predicate underlying the claim could have been discovered with due diligence, *see,* § 2244(d)(1)(D). As pointed out by Respondents, the information in the Mountain Chief trial came to light during trial in June of 2020. The same prosecutor who discovered and disclosed the information to Mountain Chief prosecuted Sherbondy. (Doc. 12 at 44-45.) Thus, had Sherbondy exercised the requisite diligence, he could have discovered this information long before August of 2023. In fact, the information was available to Sherbondy and his defense team prior to either his change of plea or sentencing. But Sherbondy elected instead to avail himself of the benefits of the plea agreement. In short, Sherbondy has not demonstrated is not entitled to a delayed starting date of his tolling period. His petition remains untimely.

    ii.    **Equitable Tolling**

The U.S. Supreme Court has held "that § 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida,* 560 U.S. 631, 645 (2010). AEDPA's limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Id.* at 645-46. A petitioner bears the burden of establishing that equitable tolling is warranted. *Pace,* 544 U.S. at 418; *Rasberry v.*

*Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

The Ninth Circuit Court of Appeals will permit equitable tolling of AEDPA's limitations period "only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing." *Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (en banc). For equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way" to prevent him from timely filing a federal habeas petition. *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). To meet the first prong, Sherbondy "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598-99. The second prong is met "only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing." *Id.* at 600. The burden of establishing grounds that warrant equitable tolling rests with the prisoner. *Pace*, 544 U.S. at 418.

As equitable tolling grounds, Sherbondy first suggests that he was not found fit to proceed, as required by law, but instead the prosecutor simply announced that

11

he was fit to proceed, and the case progressed accordingly. *See*, (Doc. 14 at 2.) Sherbondy is mistaken. Sherbondy was determined to be fit to proceed following his commitment and evaluation at the Montana State Hospital. *See*, Eval., (Doc. 12-32 at 15-16.) He was diagnosed with malingering, personality disorder with antisocial, narcissistic and passive aggressive traits, and a learning disorder, which did not meet the standard for mental disease or defect under Montana law. (*Id.* at 16.) Specifically, evaluators found Sherbondy was "believed to have had the capacity to act knowingly and purposely at the time of the alleged crimes, as well as the capacity to appreciate the criminality of his conduct and the capacity to conform his conduct to the requirement of the law. He is also believed fit to proceed. He has legal experience and possesses adequate cognitive ability to understand his charges and assist his attorney in his defense if he chooses to do so." (*Id.*) Thus, Sherbondy's suggestion that his mental fitness prevented him from voluntarily entering a plea, the argument is simply not persuasive. Moreover, Sherbondy fails entirely to explain how this situation prevented him from timely filing, in this Court, at any time following his evaluation in and sentencing in 2020, until the expiration of his federal limitations period.

In an earlier filing, Sherbondy suggested that a prior brain injury and Napalm exposure during the Viet Nam War, which contributed to his eligibility for disability benefits through the Department of Veterans Affairs, should entitle him

to equitable tolling. (Doc. 6 at 2-4.) This argument, however, is unavailing.

The equitable tolling test for mentally ill petitioners is provided in *Bills v. Clark*, 628 F. 3d 1092 (9th Cir. 2010), which instructs that "eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test," *id.* at 1099:

> (1) First, a petition must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>   (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>   (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-1100 (citation omitted). Even if a petitioner "grapple[s] periodically with significant mental health issues during his incarceration," he can still be "capable of understanding the need to timely file and effectuat[e] a filing." *Orthel v. Yates*, 795 F. 3d 935, 939 (9th Cir. 2015). The fact that Sherbondy may have qualified for employment disability benefits does not demonstrate that his mental impairment was so severe that he could not rationally understand the need to file or that he was unable to prepare a petition under *Bills*. Moreover, Sherbondy has been able to avail himself of assistance and effectuate his filings, he simply did so only after learning of the relevant sex offender treatment

13

requirements at Montana State Prison.

Moreover, the mental health records that Sherbondy points to apparently start in the mid-1960's, which relate to a time decades before his conviction and sentence. Thus, while it is understood that Sherbondy is eligible for and receives certain disability benefits, the value of this information is limited because it does not correspond to the federal filing period at issue in the present matter.

The evaluation performed at the Montana State Hospital, immediately preceding Sherbondy's sentencing hearing, has more relevant evidentiary value regarding Sherbondy's ability to file in this case. There, it was found that Sherbondy was fit to proceed, had the cognitive ability to understand and participate in his criminal proceedings, and that he had exaggerated the degree of his mental impairment while at the State Hospital. As pointed out by Respondents, evaluators at the State Hospital found Sherbondy was "actually quite sly, clever, cunning, and capable of getting his needs met." (Doc. 12 at 48)(*citing* Eval, Doc. 12-32 at 7.) Moreover, the record demonstrates that Sherbondy was able to communicate with the district court and he effectively filed several pro se motions during the course of his criminal proceedings, including requesting the appointment of alternate defense counsel. *See e.g.*, Motion (Doc. 3-1 at 78-81); Ex parte communication (*Id.* at 99); *see also*, (*Id.* at 16, Filling No. 39; 17, Filing Nos. 43 & 44.)

14

It appears that Sherbondy's main issue with his present situation, is that he was informed that he would have to admit guilt in order to complete sex offender treatment and that he, consequently, now asserts he was misinformed of the true nature of his *Alford* plea. (Doc. 14 at 3, 8.) While Sherbondy's general is position that he now disagrees with the entry of an *Alford* plea, he fails to show that his *Alford* plea constituted an "extraordinary circumstance" that prevented him from timely filing in this Court. *See Holland*, 560 U.S. at 649. Instead, it appears that he elected to file his petition only after learning about the requirements of the sex offender programming. But this does not provide an adequate basis for tolling.

Sherbondy has failed to make a showing which would entitle him to equitable tolling; his petition remains untimely. Accordingly, this matter will be dismissed with prejudice.

### III.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Sherbondy has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of statutory or equitable tolling. Accordingly, his is petition time barred. Reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. The Petition (Doc. 1) is DISMISSED with prejudice.

2. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability is DENIED.

DATED this 14th day of November, 2025.

_____
Donald. W. Molloy, District Judge
United States District Court